UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


MICHAEL R. CARROLL                          CIVIL ACTION

v.                                          NO. 19-13512

GENESIS MARINE, LLC, ET AL.                 SECTION "F"


ORDER AND REASONS

Before the Court are three motions by Genesis Marine, LLC:
(1) motion seeking review of Magistrate Judge Douglas's order
granting the plaintiff's request for attorney's fees in connection
with a successful motion to compel; (2) motion seeking review of
Magistrate Judge Douglas's order denying Genesis Marine's motion
to compel the plaintiff to travel to Denver, Colorado to submit to
an Independent Medical Exam; and (3) motion for summary judgment.
For the reasons that follow, the motions are DENIED.

**Background**

This personal injury lawsuit arises out of a rupture aboard
a barge due to over-pressurization.  A tankerman claims that he
has experienced dizziness, nausea, headaches, and other symptoms
after an air over-pressurization blowout on a barge next to the
one on which he was working, monitoring air pressure gauges during
a blowback procedure being performed on adjoining barges moored at

1

a dock. At the time of the blowout, the tankerman heard a loud noise, saw air shoot vertically up from the adjoining barge, and felt a pressure change, but otherwise was not directly or contemporaneously physically impacted by the blowout.

In late September 2018, two barges, the GM3804 and the GM3806, which were owned by Genesis Marine, LLC of Delaware, docked at the International-Matex Tank Terminals, LLC, St. Rose Dock in St. Charles Parish, Louisiana to discharge asphalt they were transporting.  On September 29, 2018, Michael Carroll was working as a tankerman for Gulfstar Industries, LLC.  He was working aboard the GM3806, which was on the "inside," closest to IMTT Dock 48, while its twin barge -- the GM3804 -- was on the "outside," next to the GRM3806.  Another Gulfstar tankerman, Charles Sens, was the Person in Charge working aboard the GM3804.  Genesis Marine employee Ryan Swafford was working with or observing Sens on the GM3804.

After the asphalt was unloaded from the barges, a blowback procedure was being conducted from the IMTT Dock to the GM3806 and GM3804 "[t]rying to clear the product [asphalt] out [by] "hav[ing] air blown through" IMTT's and Genesis' hoses.[1]  Sens set up the

---

[1] According to Carroll, the rupture occurred due to over-pressurization and defective air-pressure release valves; Carroll testified:

blowback aboard the GM3804 through the ullage hatch.  At first, the blowback was "fine," meaning "we could hear air traveling through the pipeline and ... our pressure gauges were reading normally and everything seemed to be going like normal."  Carroll Depo. Tr. p. 100-103 (if pressure is building up in  a barge, the gauges "should reflect pressure building"); (as for why he did not see the gauges indicating pressure building, Carroll attributed this to "[a] faulty pressure gauge on an asphalt barge gunked up"). While Carroll was monitoring air pressure gauges on the GM3806, the GM3804 "ruptured."[2]  Carroll heard a loud noise, saw "out of the corner of [his] eye" air shoot up from the GM3804, and he felt the pressure change.  For his part, Carroll offers different estimates for how far he was from the rupture on GM3804; the closest estimate he offered was his testimony that he was "50 or

---

They want the valves opened up a certain way to mitigate a lot of risks that could happen. Certain things have to be closed and certain things have to be open to try to keep the product out of the water and people from getting hurt.

Carroll Depo. Tr. p. 96.

[2] At times, the parties appear to confuse the barge numbers, but it is undisputed that the barge on which Carroll was working was not the one that experienced the air blowout.

3

75 feet" away, on a different barge (GM3806), from the rupture on GM3804.[3]

The IMTT dockside video recorded the over-pressurization or rupture.  The video footage does not show Carroll and the vantage is quite a distance from the incident; the video shows what appears to be white smoke (or air)[4] shooting vertically in the air above the vessel, for a few seconds.  As Carroll described it: "It looked just like a water geyser shooting up in the air probably about a hundred foot."  Carroll Depo. Tr. p. 108.[5]  The video does not show, but Carroll has testified that: the force of the blowout caused the welds to break from a 200 lb. toolbox, popping its lid into the air and that the rupture also caused the barge, the GM3804, to raise up three to four feet.[6]

The mechanics of the rupture are not briefed and Genesis Marine does not point to evidence that would allow an assessment of negligence.[7]  There is no dispute that there was an over-

---

[3] At best, there is a dispute concerning how close Carroll was working to the rupture.  Genesis Marine submits that Carroll was 223.71 feet away from the rupture on the other vessel.

[4] According to the testimony in the summary judgment record, the white smoke is a release of air.

[5] He also stated that the force of the release caused the top of an 8-foot-long toolbox to fly up about 50 feet in the air.

[6] According to the parties' pretrial submissions, there was significant damage to the GM3804 as a result of the rupture.  The Court will not and need not search the summary judgment record to determine the extent of the damage.

[7] In Carroll's complaint, he alleges that the valves owned by International-Matex Tank Terminals, LLC, connected from the IMTT

pressurization on the GM3804 and that Carroll claims he was injured as a result.  Asked about physical impact, Carroll stated that the rupture did not cause him to fall and that no object hit or struck him; however, he "felt the pressure change" and it was very loud.[8]

There is nothing in the record to indicate that anyone on the GM3804 suffered any injury due to the over-pressurization incident.  Although he was on the adjacent GM3806 -- not the GM3804 that ruptured -- Carroll claims he began experiencing symptoms which he attributes to the blowout.  After the rupture, Carroll said he was in shock and began experiencing frequent headaches,

---

dock to the Genesis barge, through which the air pressure flowed. As Carroll monitored the pressure, he alleges, IMTT personnel released air through the IMTT valves but they failed to monitor the air flow and caused too much air to be released.  And, it is alleged, the gauge that Carroll used to monitor the air pressure was defective and failed to indicate correct pressure readings. As he monitored the pressure, the barge became over-pressurized, the pressure relief valve failed to open, and the Genesis barge "ruptured due to shock waves," which allegedly injured Carroll.

[8] Carroll testified:

> Q. Am I correct that you suffered no physical injuries as a result of the air shooting out on September 29, 2018?
> A. I didn't fall or nothing hit me.
> ...
> A. ... It didn't knock me down or anything like that. It was a very loud bang and I felt the pressure change.

Carroll Depo. Tr. p. 119.

indigestion, occasional blurred vision, ringing in his ears, dizziness, nausea, and neck pain.

Carroll continued to work as a tankerman on barges a "handful" of times after the incident. But he ultimately stopped.

He claims his first serious migraine symptoms manifested in mid-October 2018 and that he experienced earaches and ringing. He also became agitated. On October 15, 2018, Carroll reported to his supervisor that he needed to seek medical treatment. The next day, Carroll presented to urgent care, but left before seeing a medical provider. On October 19, 2018, Carroll was referred to Prime Occupational Medicine by his employer, Gulfstar. Complaining of excessive fatigue, ringing in his ears, irregular heartbeat, numbness/tingling, neck pain, muscle pain, dizziness/fainting, and eye trouble, Carroll was treated by Mark Collier, N.P. Anxiety, headaches, migraines, and PTSD were noted, as was "[r]eferral to Psyh." A checkmark indicates "[R]eturn to assigned duties, as directed."

On October 24, 2018, with complaints of "headaches, dizziness, and nausea," Carroll returned to Prime again and was again referred to psychology. On October 31, 2018, complaining of head pain, nausea, and blurred vision, Carroll visited a neurologist, Troy Beaucoudroy, M.D., who noted that Carroll "note[d] a percussion type blast as well as an intense loud noise

that sounded like 'a shotgun going off in my ear.'" Dr. Beaucoudroy also noted "tenderness to palpation and spasm in his cervical spine area."[9] Dr. Beaucoudroy opined that Carroll likely sustained a concussion due to the blast and had ongoing post-concussion symptoms and that he developed PTSD, severe anxiety related to the work-related injury. Dr. Beaucoudroy noted that Carroll is not coping well and recommend that he undergo psychiatric evaluation and it was recommended that he not return to work. Dr. Beaucoudroy diagnosed: postconcussional syndrome; post-traumatic headache; post-traumatic stress disorder; anxiety disorder; and cervicalgia.

The next day, Carroll underwent a neurologic exam by Dr. Melcher, who opined that Carroll's neurologic examination was "presently normal." Carroll told Archie Melcher, M.D. that he was "100 feet away" from the rupture, and that he "did not lose consciousness." Carroll described the rupture as feeling like "the pressure change like when you open up an oven." Things got worse for Carroll.

Carroll returned to Dr. Beaucoudray on November 14, 2018, at which time it was noted that he had ongoing symptoms of headaches, nausea, anxiety, forgetfulness, irritability, poor appetite, and

---

[9] Carroll says Dr. Beaucoudroy diagnosed him as having suffered a concussion.

neck pain, intermittent blurry vision, and tinnitus accompanying headaches. He had lost 30 lbs. since the incident. His medications were listed as Butalbital APAP-Caffeine 50-325mg, Cephalexin 500mg, Ativan 1mg at bedtime, and he was prescribed Promethazine HCl 12.5mg once daily for nausea as Zofran had not been effective.

Just two weeks later, Carroll says that his anxiety became so severe that he passed out and fractured his teeth. Tony Humphries, D.D.S. performed an emergency oral examination and repaired Carroll's teeth with resin composite.[10]

Two days later, on Dr. Beaudoudray's referral, Carroll sought psychiatric treatment at Pine Belt Mental Healthcare Resources. Before visiting Pine Belt, Carroll had no history of any psychiatric hospitalizations or outpatient counseling. The notes at Pine Belt indicate that Carroll was referred due to and complained of crying spells, poor sleep, poor appetite, high anxiety, depressed mood, fatigue, lack of concentration, and loss of short-term memory; and that "[p]resenting issues for referral - ... involved with an explosion on a barge two months ago." Pine Belt's "clinical interpretation" was that Carroll "is suffering from Adjustment Disorder with mixed disturbance of emotions and

---

[10] Carroll checked off boxes indicating the following symptoms: dizziness, fainting, nervous disorder, and head injury.

conduct." Individual therapy and medical services were recommended, and he was prescribed Paxil 10mg and Trazodone 100mg.

Carroll followed up at Pine Belt on December 6, 2018, at which time Donald Dearman, a psychiatric mental health nurse practitioner, reiterated Carroll's prior diagnoses and further diagnosed him with post-traumatic stress disorder; he reiterated this PTSD diagnosis on five other occasions.

About a week later on December 13, 2018, Carroll returned to Dr. Beaucoudray, who prescribed a trial of Promethazine to help with decreased appetite and nausea, which were related to his ongoing anxiety and stress disorder attributed to the incident. Carroll continued to report anxiety attacks and recalled an episode where he became so anxious and irritable that he ripped apart some of the interior of his truck. He relayed the teeth-fracture incident and reported that his anxiety causes him to remain in a tense position with his fists clenched, resulting in neck pain.

Carroll continued with his treatment at Pine Belt and with Dr. Beaucoudray during the first two months of 2019. He was prescribed Catapres .1mg, Paxil 10mg, Paxil 30mg, Trazodone 100mg, Doxepin 75mg, and Xanax 1mg. Carroll was referred for a cervical MRI and MRI of the brain to rule out any intracranial pathology.

On March 18, 2019, Carroll was seen for a fainting episode at Christus Lake Area Hospital. Eleven days later, he was

involuntarily committed into South Mississippi State Hospital until he was discharged on April 11, 2019.  While committed for two weeks, Carroll participated in individual, group, and mileu therapy; and some medications were administered.  After his release, Carroll continued to follow up with Dr. Beaucoudray and mental health professionals at Pine Belt.

On September 27, 2019, Michael Carroll sued Genesis Marine, LLC of Delaware and International Matex-Tank Terminals, LLC, seeking to recover for lost wages and for the medical treatment he has needed since the shock waves caused his ears to ring, frequent headaches, indigestion, blurred vision, nausea, and other injuries, including emotional ones.  Genesis Marine removed the case, invoking this Court's diversity jurisdiction.

As recently as March 2021, Carroll presented to Dr. Beaucoudray with continued complaints of headaches, neck pain, nausea, and blurred vision and it was noted that "his symptoms of PTSD as well as severe anxiety continued to be obviously present." Carroll has been diagnosed with post-traumatic stress disorder, acute; post-traumatic headache; anxiety disorder; dysthymic disorder; and cervicalgia, each of which Carroll attributes to the rupture on GM3804.[11]   Dr. Beaucoudray has noted that Carroll

---

[11] Dr. Beaucoudray opines that those conditions were caused by the September 2018 incident "[b]ased on the history that was reported to me."  See Beaucoudray Depo. Tr. p. 106–17.

"sustained a work-related injury which he felt was a life-threatening experience, which he has had significant difficulties coping with since that time."

Genesis Marine now objects to two other non-dispositive orders by Magistrate Judge Douglas:[12] one allowing the plaintiff to recover his attorney's fees in connection with a successful motion to compel; and a second denying Genesis Marine's motion to compel the plaintiff to travel to Denver, Colorado to submit to an Independent Medical Exam.   Genesis Marine also seeks summary judgment dismissing the plaintiff's claims on the ground that recovery for purely emotional injuries is precluded as a matter of law because he did not suffer a physical impact nor was he in the zone of danger; tests applied by some courts to limit recovery for purely emotional damages.

I.

*A.*

Non-dispositive pretrial matters may be referred to magistrate judges.   Federal Rule of Civil Procedure 72(a) allows a party to appeal to the district judge rulings by a magistrate

---

[12] Last year, Genesis Marine filed objections to Magistrate Judge Douglas's order denying in part its motion to compel an answer related to Mr. Carroll's lifetime of prior arrests.   On December 9, 2020, construing the objections as a motion to review or to appeal the magistrate judge's order, the Court overruled Genesis Marine's objection, denying the motion seeking review of (and thereby affirming) the magistrate judge's order.

judge.  Magistrate judges are given broad discretion when resolving non-dispositive motions.  See Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A).  Upon timely objection to an order concerning a non-dispositive motion, the district court will set aside the magistrate judge's order only if it is "clearly erroneous or is contrary to law."  See Fed. R. Civ. P. 72(a).  A magistrate judge's legal conclusions are reviewed *de novo*, while factual findings shall not be overturned unless clearly erroneous.  Moore v. Ford Motor Co., 755 F.3d 802, 806 (5th Cir. 2014)(citation omitted).  A ruling is "clearly erroneous" when the district court is "left with the definite and firm conviction that a mistake has been committed."  See United States v. Stevens, 487 F.3d 232, 240 (5th Cir. 2008)(quoting United States. v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)); see also Moore v. Ford Motor Co., 755 F.3d 802, 808 n.11 (5th Cir. 2014)(citation omitted)("A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole.").

*B.*

1.  The magistrate judge did not err in granting the plaintiff's request for attorney's fees.

Magistrate Judge Douglas granted Carroll's request for attorney's fees after determining that Genesis Marine failed to properly and timely respond to discovery.  Genesis Marine does not

object insofar as the magistrate judge granted the plaintiff's motion to compel; rather, Genesis Marine objects insofar as the magistrate judge granted the plaintiff's request to fix attorney's fees in connection with its successful motion to compel. In particular, Genesis Marine accuses plaintiff's counsel of making "inaccurate representations in pursuit of fees."[13] Genesis Marine identifies no error of fact or law in the March 10, 2021 ruling and thus offers no ground whatsoever to disturb it.[14]

The scope of permissible discovery embraced by the Federal Rules of Civil Procedure is broad. See Fed. R. Civ. P. 26(b)(1)("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"). Once a party is served with a request within Rule 26(b)'s scope, that "party to whom the request is directed must respond in writing within 30 days after being served[;]" and the rules direct a response "[f]or each item or category[.]" Fed. R. Civ. P. 34(b)(2)(A). When a party fails

---

[13] Genesis Marine challenges the accuracy of this statement by plaintiff's counsel: "At one point, counsel for Genesis advised that the supplemental production would be delayed [due to] unforeseen circumstances that caused his administrative assistant to miss time from work." Precisely the source of Genesis Marine's objection is unclear: Genesis Marine admits that it advised opposing counsel that its counsel's assistant tested positive for COVID-19 and thus was out of the office.

[14] As it did in its prior objections, Genesis Marine invokes the incorrect standard of review. Rule 72(a) pertaining to non-dispositive matters governs here, not (b).

to produce documents or respond to discovery requests, Rule 37 allows the party seeking discovery to request an order compelling discovery.  Failing to cooperate or failing to fulfill discovery obligations may result in sanctions.  If a motion to compel is granted or the requested information is provided *after* the motion to compel is filed, Rule 37(a)(5)(A) <u>mandates</u> that the Court must, "after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, or the party or attorney advising that conduct, or both to pay movant's reasonable expenses incurred in making the motion, including attorneys' fees."  The Court shall not order payment of expenses if

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).  Although Genesis Marine invokes (iii), it identifies no circumstances that make an award of expenses unjust.

Counsel for Carroll directed specific discovery requests to counsel for Genesis Marine, including a request for production of incident reports or statements by any other person related to the incident; inspection, maintenance, repair, and safety meeting

14

minutes for the vessel, valves, gauges, and equipment five years prior to the incident to the present time; and all reports prepared in connection with any investigation conducted by outside agencies or third parties.  When Genesis Marine failed to provide written responses addressed to each of these requests within 30 days, the plaintiff filed a motion to compel.  In the motion to compel, the plaintiff also requested that Genesis Marine be compelled to provide deposition dates for fact witness (and Genesis Marine employee) Ryan Swafford; plaintiff's counsel had requested deposition dates five times between January 5, 2021 and February 4, 2021.  Counsel for Genesis Marine wholly ignored those requests.[15]  It was not until March 1, 2021 at 8:37 p.m. -- almost one month after the motion to compel was filed -- that counsel for Genesis Marine proposed dates for Swafford's deposition.  Genesis Marine's failure to timely cooperate in scheduling Swafford's deposition offers an independent ground to reject its present motion seeking reversal of the magistrate judge's non-dispositive pretrial ruling concerning attorney's fees.  Reasonable cooperation among counsel on discovery matters is required by the Federal Rules and failure to do so without substantial justification is sanctionable.  Where, as here, opposing counsel

---

[15] Counsel for Genesis Marine fails to mention this aspect of the motion to compel or its failure to respond to repeated requests by plaintiff's counsel to depose Ryan Swafford.

are not cooperating with the utmost professionalism and good faith,
compliance with the formalities of the Federal Rules of Civil
Procedure is particularly critical.[16]

Genesis Marine appears to challenge the magistrate judge's
application of the Federal Rules' requirement that a party must
provide an item-by-item response to a discovery request.[17]  Genesis
Marine's objection holds no water.[18]  Having failed to identify any

---

[16] The record indicates that the common denominator in cooperation/
communication failures in this case is Genesis Marine.

[17] It is difficult to follow Genesis Marine's argument in its
objection.  At the outset, counsel focuses on plaintiff's counsel's
alleged misrepresentation (without explaining which part of the
statement was inaccurate or how any inaccuracy about a circumstance
conveyed by defendant's counsel to plaintiff's counsel could be
attributed to plaintiff's counsel).  The Court fails to see how
plaintiff's counsel's representation to the magistrate judge that
Genesis Marine's counsel's assistant missed some time from work
was either inaccurate or somehow misleading.  Genesis Marine admits
that its office was closed due to his assistant's positive COVID-
19 diagnosis at the relevant time.  What bearing this fact, or at
what level of abstraction it was conveyed to plaintiff's counsel
or the magistrate judge, has on the magistrate judge's attorney's
fees ruling is not clear.  If counsel is suggesting he could not
work while the office was closed and therefore this time period
should not count against him, he stops short of advancing this
argument.  Even if he did, it would fail.  There is no dispute
that Genesis Marine failed to respond to each item of discovery
requested within 30 days and it failed to timely provide dates to
depose a fact witness.

[18] Counsel for Genesis Marine frames its objection as challenging
the magistrate judge's grant of attorney's fees, insisting that
other circumstances make an award of expenses unjust.  Counsel
fails to persuade the Court how such an award is unjust, where, as
here, the record indicates that it is counsel for Genesis Marine
that has obstructed the plaintiff's efforts to cooperate, whether
it be in properly and formally responding to discovery requests,
scheduling a deposition, or as explained below, instead of covering
the expenses of its retained expert to travel to the forum,
insisting that the plaintiff -- a person claiming severe emotional

error of fact or law in the magistrate judge's non-dispositive ruling, its objection must be overruled.[19]

2.   The magistrate judge did not err in denying Genesis Marine's motion to compel the plaintiff to appear for his mental examination in Denver, Colorado.

On March 5, 2021, counsel for Genesis Marine advised counsel for plaintiff that Carroll was scheduled to undergo an Independent Medical Exam in Denver, Colorado at 2:00 p.m. on March 12, 2021 with Hal Wortzel, M.D., and that all reasonable and necessary expenses for the trip would be paid by Genesis Marine. Carroll's counsel advised "without explanation" that Carroll would not travel to Denver for an IME. This prompted Genesis Marine to file a motion to compel, which was denied by the magistrate judge, who observed that counsel for Genesis Marine had identified no cases on point in the Eastern District of Louisiana that support defense counsel's position that a plaintiff can or should be compelled to

---

distress -- travel well outside the forum to Denver, Colorado to submit to a defense medical exam.

[19] Genesis Marine also objects to the length of the plaintiff's motion to compel. Because there is no dispute that plaintiff's counsel attempted to resolve the discovery issues before filing the motion to compel and the length of the motion was well within the page limitations prescribed by the Local Rules, this objection is frivolous. Again, Genesis Marine insists that its global response (that all documents it could locate had been produced) complied with the discovery rules. Magistrate Judge Douglas disagreed. The clear language of the discovery rules demonstrate that she did not err in doing so.

board a plane during a pandemic to travel 1,300 miles outside of the forum state to submit to an independent medical exam with the defense's retained expert. Counsel for Genesis Marine objected on the record at the hearing that the magistrate judge had not identified any case that refuted its position that "it's plaintiff's burden and plaintiff has failed. They had more than I want to say it was more than 1.5 million people traveled this weekend by air." This motion seeking to overturn the magistrate judge's ruling followed. Because Genesis Marine has identified no portion of the magistrate judge's ruling that was clearly erroneous or contrary to law, its objection must be overruled.

Rule 35 of the Federal Rules of Civil Procedure allows the Court to order a party whose mental or physical condition is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. There is no dispute that Carroll's mental condition is in controversy and Genesis Marine retained a licensed examiner. Nor is there any dispute that, even before Genesis Marine filed its motion to compel, the plaintiff agreed to submit to the examination with Genesis Marine's doctor of choice in the forum, New Orleans, Louisiana. Rule 35 does not address the location where the IME should or must take place. Now it is Genesis Marine that "without explanation" refuses to accommodate the plaintiff's reticence to travel to Denver, Colorado. Because Genesis Marine fails to invoke any binding or

persuasive authority in support of its position that a plaintiff complaining of emotional distress must be compelled to travel outside the forum of New Orleans to Denver for a mental health exam by its expert, the magistrate judge's order denying Genesis Marine's motion will not be disturbed.

Genesis Marine does not dispute the magistrate judge's observation that it invoked no on-point, let alone binding, authority to support its position (that the plaintiff must travel wherever the defendant's retained expert is located unless he submits medical or other evidence to show doing so unduly burdens him). Indeed, it still has not. Instead, Genesis Marine maintains its singular focus that it is permitted to select a doctor of its choosing and it is the plaintiff's burden to demonstrate particularly why or how air travel to wherever that doctor might be located is unduly burdensome. An unreasonable position considering the case law.

There are plenty of unpublished, district court decisions considering what is a reasonable location, or reasonable distance to travel, for an IME. And the general rule that emerges is that the plaintiff should make himself available for examination in the forum or district in which the lawsuit was filed. Like other discovery matters, the touchstone is reasonableness. For example, in Stephens v. FAF, Inc., No. 18-006, 2018 WL 7288582, at *2 (W.D.

Tex. June 21, 2018), the magistrate judge denied without prejudice the defendants' motion seeking an independent medical examination, finding that "the distance to the location of the proposed medical exam is unreasonable." Id. ("Google Maps estimates the proposed location of the medical examination [in] Houston, Texas, is 562 miles from Plaintiff's residence, and the travel time from Plaintiff's residence to the examination location is 7 hours and 58 minutes."). The magistrate judge further ordered that, respecting any future motion for an independent medical examination, "the location of the examination must be within the boundaries of the ... Western District of Texas" unless the defendants showed good cause for their inability to find a suitable medical practitioner within the District. Id.

The magistrate judge in Stephens relied on two cases from the Eastern District of Louisiana. The first observed that the venue where the suit is filed typically is the appropriate location for a medical exam, Williams v. Nguyen, No. 16-13983, 2017 WL 1177914, at *2 (E.D. La. Mar. 30, 2017)(Roby, M.J.)(citation omitted). There, ultimately, Chief Magistrate Judge Roby granted the motion as unopposed when the parties agreed that the defendant would pay for an Uber or taxi to transport the plaintiff to and from his house in Algiers to Houma, Louisiana. The second held that, given the limitation-claimant's physical condition and the fact that he is a claimant who did not choose the New Orleans forum, a distance

of 214 miles is too far to make the plaintiff travel for a medical exam, In re Bordelon Marine, Inc., No. 11-1473, 2012 WL 1902576, at *3 (E.D. La. May 25, 2012)(Roby, M.J.)(finding that the IME and vocational rehabilitation evaluation should be conducted at a location closer to the claimant).  These two cases were invoked by Magistrate Judge Currault in Knuth v. Regional Transit Authority of New Orleans, No. 20-396, 2020 WL 6742800 (E.D. Nov. 17, 2020)(citation omitted)(noting the "usual case" that a plaintiff may be ordered to appear for examination at the place where the trial will be held, which allows the examining physician to be available for testimony and indicating that the plaintiff, a New York resident, could be compelled to travel from her home state to the forum in New Orleans, Louisiana for an IME); see also Thomas v. W&T Offshore, Inc., No. 16-14694, 2018 WL 501508 (E.D. La. Jan. 22, 2018)(van Meerveld, M.J.)(granting motion to compel IME, determining that it is reasonable and not unduly burdensome for the plaintiff to travel 85 miles *within the forum* to submit to the examination).[20]

---

[20]Other non-binding authorities in which a plaintiff was ordered to travel involve long-distance travel *to the forum*.  See, e.g., Integrated Communications & Technologies, Inc. v. Hewlett-Packard Financial Services Company, No. 16-10386, 2021 WL 723322, at *1 (D. Mass. Feb. 24, 2021)(denying motion for remote Rule 35 medical exams by plaintiffs, who were residents of China, and ordering the plaintiffs to fly to the United States, where they chose to file suit, for examination in spite of pandemic); Cameron v. Gutierrez, No. 19-841, 2020 WL 5326946, at *5 (D.N.M. Sept. 4, 2020)(noting that the burden was on the plaintiff to provide documentation from

Genesis Marine fails to address these cases and the "usual case" rule that has emerged: a plaintiff will generally be ordered to appear for an IME conducted somewhere in the forum.  It is Genesis Marine that seeks to create an exception to this general custom of ordering a plaintiff to travel to the forum to submit to an IME.[21]

Instead of demonstrating a clear error of fact or law, reviewing the non-binding authorities summarized here simply reinforce the reasonableness of Magistrate Judge Douglas's ruling. It is clear that she did not err when she determined that it was unreasonable to order the plaintiff, who alleges that he suffers from severe emotional distress, to travel from Foxworth, Mississippi to New Orleans, Louisiana to board a plane to fly to Denver, Colorado, submit to a four-hour mental health examination, and then return by flight to New Orleans, Louisiana and then drive back to Foxworth, Mississippi.[22]  The plaintiff has no objection

_____

a medical provider confirming that travel from Kentucky to submit to an IME *in the forum* of New Mexico during the pandemic presented a medically unacceptable level of risk).

[21] The non-binding authorities invoked by Genesis Marine do not depart from this "usual case" custom; rather, Genesis Marine invokes cases in which travel to the forum was compelled or the parties agreed to the location of the exam.

[22] Cf. Sanders v. Cangiolosi, No. 17-8563, 2021 WL 1121084, at *2-3 (N.D. Ill. Mar. 24, 2021)(denying the defendant's motion to compel IME where it would require the plaintiff to travel from California to Chicago, but ordering that the plaintiff must submit to a medical examination within 100 miles driving distance from the plaintiff's house; noting that the plaintiff's concern about traveling in the midst of a pandemic "cannot be said to be invalid

to submitting to an IME with Genesis Marine's expert of choice, only to the location and burdensome nature of traveling so far outside the forum during a pandemic to submit to it. The non-binding case literature indicates that the plaintiff's offer to be examined in this District was a reasonable accommodation. Magistrate Judge Douglas did not err in denying Genesis Marine's motion.

II.

*A.*

Summary judgment is proper if the record discloses no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit." Id. at 248.

If the non-movant will bear the burden of proof at trial, the movant "may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting

---

or raised merely to obstruct the defendants' undoubted right to have the plaintiff examined.").

trial." In re La. Crawfish Producers, 852 F.3d 456, 462 (5th Cir. 2017)(citation omitted).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See Anderson, 477 U.S. at 248. Nor do "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation[.]" Brown v. City of Houston, Tex., 337 F.3d 539, 541 (5th Cir. 2003); Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)("[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."). The non-moving party must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). Ultimately, to avoid summary judgment, the non-movant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 387 (5th Cir. 2007).

In deciding whether a fact issue exists, the Court views the facts and draws all reasonable inferences in the light most

favorable to the non-movant. See Midwest Feeders, Inc. v. Bank of Franklin, 886 F.3d 507, 513 (5th Cir. 2018). And the Court "resolve[s] factual controversies in favor of the nonmoving party," but "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

The Court must not evaluate the credibility of witnesses on a paper record, nor may it weigh evidence. When considering summary judgment motions prior to a bench trial, however, the Court in non-jury cases "has somewhat greater discretion to consider what weight it will accord the evidence" and "to decide that the same evidence, presented to him . . . as a trier of fact in a plenary trial, could not possibly lead to a different result." Jones v. United States, 936 F.3d 318, 321-22 (5th Cir. 2019)(citations, internal quotations omitted).

*B.*

Though the issue was not briefed, the parties appear to agree that their dispute is governed by general maritime law.  Genesis Marine moves for summary judgment on the ground that the plaintiff was not in the zone of danger such that, even if the Court considered the plaintiff's negligent infliction of emotional distress theory of recovery, he is not eligible to pursue it

because he was outside the zone of danger.  The plaintiff counters that a contested issue of material fact -- Carroll's proximity to the rupture; whether he was, in fact, in the "zone" -- precludes summary judgment.[23]   The Court agrees.

Twenty-eight years ago, this Court determined that genuine issues of material fact as to whether an "emotionally disabled" plaintiff diagnosed with Post-Traumatic Stress Disorder was within the "zone of danger" following an explosion on a rig and whether the plaintiff's post-incident fright was a reasonably foreseeable consequence of the drilling company's negligence precluded summary judgment for the defendant, in Anselmi v. Penrod Drilling Corp., 813 F. Supp. 436 (E.D. La. 1993).  Once again, this Court is presented with a fact-specific scenario that tests the limits of the scope of workplace tort liability for plaintiffs alleging emotional damages and physical manifestations of emotional injury. And, once again, this Court finds that a defendant has failed to carry its burden to show that summary judgment in its favor must be granted.

---

[23] Carroll also submits that another issue of fact that precludes summary judgment is whether his reaction to the incident was a reasonably foreseeable consequence of Genesis Marine's negligence. Because Genesis Marine's motion is anchored to Carroll's proximity to the rupture, the Court does not address this other asserted fact issue.

Under general maritime law, it is settled that a plaintiff may "recover for emotional injury provided that there is some physical contact." Plaisance v. Texaco, Inc., 966 F.2d 166, 169 (5th Cir. 1991)(*en banc*)(consulting the Restatement for the requirements to satisfy the physical-injury test). To recover for emotional injuries under the physical-impact test, the plaintiff must show that the physical contact or impact is more than "trivial" or "transitory, non-recurring physical phenomena, ... such as dizziness, vomiting, and the like," and there must be a causal relationship between the physical impact and the emotional injury. See In re Deepwater Horizon, 841 Fed.Appx. 675, (5th Cir. 2021)(unpublished, per curiam)(citations omitted).

A plaintiff pursuing a zone-of-danger theory under general maritime law to recover for emotional injury is on shakier ground. The zone of danger test limits recovery for emotional injury to those plaintiffs whose emotional injury occurred while they were in immediate risk of physical harm by the defendant's negligent conduct; Jones Act seaman or railroad employees within the zone of danger of physical impact can recover for fright.[24]  However, as

---

[24] See Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 544, 547-48 (1994)(holding that claims for negligent infliction of emotional distress are cognizable under FELA and adopting the zone of danger test to "limit[] recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct.").

it has for decades, the Fifth Circuit recently reaffirmed that it continues to "le[ave] open the question of whether a zone-of-danger negligent infliction of emotional distress claim presents a recoverable injury." See In re Deepwater Horizon, 841 Fed.Appx. 675 (5th Cir. 2021)(unpublished, per curiam)(citing Barker v. Hercules Offshore, Inc., 713 F.3d 208, 224 (5th Cir. 2013)). There, Bradley Shivers and other fishermen plaintiffs alleged that they were 100 to 200 feet away from the Deepwater Horizon oil rig when they approached after it exploded, felt and heard a sonic boom and rumbling sounds coming from below the surface of the water, and arrived at the scene to assist in rescue efforts, saw flames from the rig as high as 500 feet in the air, and suffered burns on their faces and singed here during their rescue efforts before leaving five hours later. Another Section of this Court granted the defendants' motion to dismiss, determining that the allegations were insufficient to satisfy the zone of danger test. And the Fifth Circuit agreed. See id. ("we have held that the plaintiff must be in the same location as the accident and face immediate risk of harm.").

Genesis Marine invokes the Shivers case, arguing that the record shows that Carroll was not in the dangerous area because he was on an adjacent barge "looking the opposite direction"[25] from

---

[25] Genesis Marine submits the video in support of its submission that Carroll was looking in the direction opposite the rupture.

the barge that ruptured.[26]  A genuine dispute concerning a material fact -- the distance the plaintiff was from the rupture on the GM3804 -- precludes summary judgment.  Genesis Marine submits that "[t]he reality to observe is that Mr. Carroll was more than 220 feet away" from the rupture.  In support of this fact, Genesis Marine submits that Randy Bullard, its retained surveyor -- using Carroll's expert's (Greg Perkins') data -- calculated that Carroll was 223.71 feet away from the rupture on the other vessel.[27]  To be sure, if this fact is proved at trial, then it seems to undermine the plaintiff's zone of danger showing.  However, the plaintiff counters with his deposition testimony in which he attests that he was working much closer, just 50-75 feet away from the rupture and, thus, close enough to bring him within the zone of danger of imminent physical harm.[28]  This factual dispute precludes summary judgment.

_____

No people were discernible from the Court's viewing of the video. In any event, Carroll testified that he saw the rupture out of the corner of his eye.

[26] It is undisputed that Carroll was not on the GM3804 barge that ruptured.  See, e.g., Carroll Depo. Tr. p. 176.

[27] Carroll purportedly told Dr. Melcher on November 1, 2019 that he was "100 feet away" and that he "did not lose consciousness."

[28] Genesis Marine did not reply to the plaintiff's identification of this fact issue.  Nor does it respond to the evidence in the record supplied by the plaintiff detailing the severity of the damage to the GM3804, including deck deformity for a length of 69 feet and a width of 28 feet, six inches; repair of 56,680 lbs. of steel; and repairs costing $1.5 million.  The severity of the damage, the plaintiff argues, supports the plaintiff's narrative that the incident was so substantial that the plaintiff felt and heard the rupture.  It is the loud sound and percussive impact

***

Fright is a subjective and thus often mystifying phenomenon. For a fact-finder to evaluate the genuineness of a plaintiff's subjective fear that he faced death or physical harm,[29] the plaintiff must first establish that he was objectively within the zone of danger.  One aspect of this objective determination is the plaintiff's proximity to the danger.  On this relative fact, there is a controversy in the record.  Summary judgment must be denied.

Accordingly, for the foregoing reasons, IT IS ORDERED that Genesis Marine's three motions are hereby DENIED.[30]

New Orleans, Louisiana, May 5, 2021

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

(and resulting ringing in the ears, blurred vision, dizziness, earaches, etc.), which the plaintiff suggests defeats summary judgment on the physical injury test.  On this record, the Court agrees that Genesis Marine has not carried its burden to show it is entitled to judgment as a matter of law.

[29] Genesis Marine does not appear to dispute that the subjectivity prong is met for the purposes of its motion.

[30] As this Court indicated during the pretrial conference, the parties shall brief all seriously contested issues of law in advance of trial.  The applicable law and the parameters of the zone of danger theory of recovery shall be included in that briefing.  Counsel shall be mindful of 28 U.S.C. § 1927.